ORAL ARGUMENT NOT YET SCHEDULED

BRIEF FOR APPELLEE
————————————————

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT
————————————————

No. 22-3077
————————————————

UNITED STATES OF AMERICA,                              Appellee,

v.

OWEN A. WILLIAMS,                                      Appellant.

————————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
————————————————

MATTHEW M. GRAVES
Acting United States Attorney

CHRISELLEN R. KOLB
NICHOLAS P. COLEMAN
T. ANTHONY QUINN
*  ERIC HANSFORD
D.C. Bar #1017785
Assistant United States Attorneys
*  Counsel for Oral Argument
601 D Street, NW, Room 6.232
Washington, D.C. 20530
Eric.Hansford@usdoj.gov
(202) 252-6829

Cr. No. 02-273 (PLF)

# CERTIFICATE OF PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), appellee hereby states as follows:

## Parties and Amici

All parties, intervenors, and amici appearing before the district court and in this Court are listed in the brief for appellant.

## Rulings Under Review

References to the ruling at issue appear in the brief for appellant.

## Related Cases

Appellee is unaware of any other related cases.

## STATUTES AND REGULATIONS

Pursuant to D.C. Circuit Rule 28(a)(5), appellee states that all pertinent statutes and regulations are contained in the addendum to the brief for appellant.

# TABLE OF CONTENTS

COUNTERSTATEMENT OF THE CASE.............................................. 1

    Offense and Plea................................................................ 2

    Coram Nobis Proceedings.................................................... 4

SUMMARY OF ARGUMENT......................................................... 7

ARGUMENT ........................................................................... 8

    Williams Raises No Colorable Claims of Ineffectiveness. ................. 8

        A.   Standard of Review and Applicable Legal Principles .......... 8

        B.   Precedent Forecloses Williams's Theory of Deficiency. ..... 10

        C.   Williams Offers No Viable Claim of Prejudice or Explanation for His Delay. ................................................ 14

CONCLUSION ...................................................................... 17

# TABLE OF AUTHORITIES*

**Cases**

\* *Chaidez v. United States*, 568 U.S. 342 (2013) ............................ 8, 10, 11

*Glover v. United States*, 531 U.S. 198 (2001) .................................. 11, 12

\* *Lee v. United States*, 137 S. Ct. 1958  (2017) .................................. 10, 15

*Padilla v. Kentucky*, 559 U.S. 356 (2010) ......................................... 5, 10

*Strickland v. Washington*, 466 U.S. 668 (1984) ........................................ 9

*Twin Rivers Paper Co. LLC v. SEC*, 934 F.3d 607 (D.C. Cir. 2019) ...... 12

*United States v. Bejacmar*, 217 F. App'x 919 (11th Cir. 2007) .............. 16

*United States v. Delhorno*, 915 F.3d 449 (7th Cir. 2019) ...................... 16

*United States v. George*, 676 F.3d 249 (1st Cir. 2012) ............................. 8

*United States v. Knight*, 981 F.3d 1095 (D.C. Cir. 2020) ...................... 15

*United States v. Marshall*, 946 F.3d 591 (D.C. Cir. 2020) ................. 9, 14

*United States v. Mills*, 221 F.3d 1201 (11th Cir. 2000) ........................... 9

*United States v. Morgan*, 346 U.S. 502 (1954) ............................... 8, 9, 16

\* *United States v. Newman*, 805 F.3d 1143 (D.C. Cir. 2015) ............ 6, 8-14

---

\* Authorities upon which we chiefly rely are marked with asterisks.

*United States v. Sash*, 374 F. App'x 198 (2d Cir. 2010) ........................ 16

*United States v. Sayan*, 968 F.2d 55 (D.C. Cir. 1992) ........................... 13

## Other References

8 U.S.C. § 1101(43)(M) .................................................................... 4

18 U.S.C. § 371 ................................................................................ 1

28 U.S.C. § 2255 ............................................................................. 8

Fed. App. R. 4(a)(1)(C) .................................................................... 2

## ISSUE PRESENTED

Whether the district court correctly dismissed Williams's coram-nobis petition for failure to state a viable claim of ineffectiveness, where Williams invokes plea counsel's duty to consider deportation consequences under *Padilla v. Kentucky*, 559 U.S. 356 (2010), but Williams's 2002 plea was final before *Padilla* was issued, and the Supreme Court has held that *Padilla* does not apply retroactively.

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

—————————————

No. 22-3077

—————————————

UNITED STATES OF AMERICA,                              Appellee,

v.

OWEN A. WILLIAMS,                                        Appellant.

—————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

—————————————

BRIEF FOR APPELLEE

—————————————

## COUNTERSTATEMENT OF THE CASE

On July 12, 2002, appellant Owen Williams pleaded guilty to one count of conspiracy to defraud the United States (18 U.S.C. § 371) before the Honorable Paul L. Friedman (Joint Appendix (JA) 34-35). The district court sentenced him on June 25, 2003, to 12 months and 1 day of imprisonment, 3 years of supervised release, and restitution of $184,888.00 (JA11-16, JA66). Williams did not file a direct appeal.

Williams filed a petition for a writ of error coram nobis to vacate his conviction on January 28, 2021 (ECF 28). Following the government's opposition (ECF 38) and Williams's reply (ECF 43), the district court denied the petition in a written opinion on August 9, 2022 (JA77-87). Williams filed a timely notice of appeal on October 5, 2022 (ECF 45). *See* Fed. App. R. 4(a)(1)(C).

## Offense and Plea

From April 1996 to February 2001, Williams "participated in the purchase and sale of residential real estate in the District of Columbia metropolitan area through loans which were obtained through falsely qualifying buyers and fraudulently inflating appraisals" (ECF 9 at 1-2; see ECF 1). Williams would typically act "as the purchaser and seller of the property that would be 'flipped'" (ECF 9 at 1). "Williams and his co-conspirators identified properties which could be bought cheaply, recruited buyers to sign sales contracts on these properties, obtained appraisals which falsely inflated the value of the properties, and participated in falsely enhancing the buyers' qualifications so that they would be approved for loans" (*id.*). "To qualify the buyers, Mr. Williams would get false documents regarding the income and/or the down

2

payments" (*id.*). The scheme left "unqualified buyers . . . responsible for mortgages that were in amounts in excess of what the property was worth" (*id.*).

Williams purchased and sold at least 17 such properties during the conspiracy, including 13 properties sold to buyers through loans insured by the Federal Housing Administration (FHA) of the Department of Housing and Urban Development (HUD) (ECF 9 at 1-2). By the time of the plea, two of those FHA-insured mortgages had already defaulted, leading to foreclosures of the properties, HUD acquiring the properties at the combined cost of the total loan and lender's foreclosure expenses, and HUD then reselling the properties "with a loss to the government of over $184,000" (*id.* at 2).

During the plea hearing, the court advised Williams of the potential immigration consequences of a guilty plea:

> THE COURT: Mr. Williams where were you born?
>
> THE DEFENDANT: Jamaica.
>
> THE COURT: I need to tell you that if you are not a citizen of the United States, you are advised that conviction of this felony offense may have the consequences of deportation or exclusion from admission to the United States or denial of naturalization pursuant to the laws of the United States. Do you understand that?

3

THE DEFENDANT: Yes, I understand that.

THE COURT: Now that I've discussed your rights with you, Mr. Williams, do you still want to plead guilty to this offense?

THE DEFENDANT: Yes. (JA24.)

Before accepting the plea, the district court repeatedly offered to allow Williams to discuss the plea further with counsel or the court, but Williams affirmed he had no questions (JA34). Williams never raised immigration-related concerns during the plea or sentencing hearings.

## Coram Nobis Proceedings

Nearly two decades later, Williams petitioned for a writ of error coram nobis (ECF 28), seeking to set aside his plea and conviction on the ground that plea counsel had been ineffective by failing to address the immigration consequences of Williams's plea. The § 371 conviction, Williams contended, qualified as an "aggravated felony" under immigration law because it "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000," 8 U.S.C. § 1101(43)(M), making Williams subject to deportation (see ECF 28 at 10-11). Williams's accompanying affidavit alleged that his plea attorney (Grandison Hill) had known Williams was not a citizen, but "did nothing to my knowledge to try to mitigate the . . . immigration exposure I had due to the charges"

4

(JA75). Indeed, Williams said he never received "any legal advice and defense pertaining to the exposure I had regarding my immigration status" (*id.*). Williams added: "If I had known the immigration consequences of my guilty plea at the time I would have sought to go to trial or would have had attorney Hill negotiate a different plea agreement to try and avoid immigration consequences due to my significant and deep family, life, and monetary ties to the United States" (JA75).

The district court denied the petition for failure to state a cognizable claim of ineffectiveness (JA83-87). *See also* JA83 n.2 (reserving judgment on whether petition might fail on other grounds as well). While "sympathetic" to Williams's "situation," the district court explained that Supreme Court precedent made clear that counsel at the time had no duty to advise about immigration consequences (JA84-85). *Padilla v. Kentucky*, 559 U.S. 356 (2010), had recognized a duty for criminal defense attorneys to advise about clear deportation consequences of a conviction. But *Chaidez v. United States*, 568 U.S. 342 (2013), held that *Padilla* does not apply retroactively, so "defendants whose convictions became final prior to *Padilla* therefore cannot benefit from its holding." *Id.* at 358.

Williams's allegations, the district court explained, importantly differed from those found in a more successful ineffectiveness claim by his co-conspirator Kerry Newman (see JA79-81, JA85-87). This Court had held in *United States v. Newman*, 805 F.3d 1143 (D.C. Cir. 2015), that "if a lawyer 'affirmatively misrepresent[s]' or misstates 'the potential immigration consequences of a conviction,' such conduct could support a cognizable claim of ineffective assistance of counsel" (JA85) (quoting 805 F.3d at 1147). Counsel in *Newman* (also attorney Hill) had made such misrepresentations, incorrectly advising Newman and the court that a sentence of one year or less could avoid deportation (JA80-81). But "[t]he facts of Mr. Williams' case are different from those of Mr. Newman," because Williams "concedes that Mr. Hill never made an affirmative misstatement about the immigration consequences of his plea" (JA85). Further, the district court added, this Court in *Newman* specifically rejected the argument that defense attorneys "had a duty to research [the immigration consequences of pleading guilty prior to *Padilla*] and take them into account when negotiating a plea deal'" (JA85) (quoting 805 F.3d at 1147).

Thus, the district court concluded, Williams's "petition falls squarely within the scope of *Padilla* and *Chaidez*, and he does not prove that a 'fundamental error' existed at the time of his conviction" as required for coram nobis relief (JA87).

## SUMMARY OF ARGUMENT

As the district court correctly explained, precedent rejects Williams's theories for ineffectiveness. *Chaidez* held that counsel had no duty to advise about deportation consequences of a plea before *Padilla*. And *Newman* held that counsel also had no obligation to account for deportation consequences when negotiating or entering a plea. Moreover, Williams cannot show the prejudice required to establish ineffectiveness, given his contemporaneous acknowledgment during the plea colloquy that he was aware "that conviction of this felony offense may have the consequences of deportation," and his decision to plead guilty anyway. Nor can he show the diligence required for coram nobis relief, offering no explanation for his decades of delay in bringing his claim. The denial of coram nobis relief should be affirmed.

# ARGUMENT

**Williams Raises No Colorable Claims of Ineffectiveness.**

## A.    Standard of Review and Applicable Legal Principles

"A petition for a writ of *coram nobis* provides a way to collaterally attack a criminal conviction for a person . . . who is no longer 'in custody' and therefore cannot seek habeas relief under 28 U.S.C. § 2255 or § 2241." *Chaidez v. United States*, 568 U.S. 342, 345 n.1 (2013). Still, "[c]ontinuation of litigation after final judgment and exhaustion or waiver of any statutory right of review should be allowed through this extraordinary remedy only under circumstances compelling such to achieve justice." *United States v. Morgan*, 346 U.S. 502, 511 (1954). Courts thus "may grant coram nobis relief only in 'extraordinary cases' where it is necessary 'to achieve justice,'" *United States v. Newman*, 805 F.3d 1143, 1146 (D.C. Cir. 2015), such as "to redress a fundamental error." *United States v. Denedo*, 556 U.S. 904, 911 (2009). Moreover, "[w]hen a defendant seeks to vacate a *guilty-plea* conviction by way of coram nobis, great caution is warranted." *United States v. George*, 676 F.3d 249, 257 (1st Cir. 2012) (emphasis added). "Because custody no

longer attaches and liberty is no longer at stake, an inquiring court should pay particular attention to whether there is 'some . . . basis for thinking that the defendant is at least arguably guilty.'" *Id.* (citation omitted). Further, Williams acknowledges, a defendant seeking coram nobis relief must show "'sound reasons for failing to seek relief earlier.'" Appellant's Brief (Br.) 13 (quoting *United States v. Mills*, 221 F.3d 1201, 1203 (11th Cir. 2000)); *see also Morgan*, 346 U.S. at 512.

To establish ineffectiveness, a defendant must show both that (1) counsel was constitutionally deficient, meaning that "counsel's representation fell below an objective standard of reasonableness," and (2) the defendant was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). In evaluating claims of deficiency, "[c]ourts avoid the bias of hindsight by applying 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *United States v. Marshall*, 946 F.3d 591, 595 (D.C. Cir. 2020) (quoting *Strickland*, 466 U.S. at 689). When the alleged deficiency comes before a plea, "the defendant can show prejudice by demonstrating a reasonable probability

9

that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lee v. United States*, 137 S. Ct. 1958, 1965 (2017) (quotation marks omitted).

As to immigration consequences specifically, *Padilla* held that an attorney for a criminal defendant should advise about the risk of deportation arising from a guilty plea. 559 U.S. at 369. In *Chaidez*, however, the Court held that "*Padilla* does not have retroactive effect," meaning that "defendants whose convictions became final prior to *Padilla* . . . cannot benefit from its holding." 568 U.S. at 344, 358.

## B.  Precedent Forecloses Williams's Theory of Deficiency.

As the district court correctly explained (JA83-87), *Chaidez* and *Newman* foreclose Williams's theory of ineffectiveness. His fundamental complaint is that counsel failed to discuss the immigration consequences of a conviction while advising about the guilty plea (see, e.g., Br. 17). But as *Chaidez* explains, *Padilla* broke new ground in finding that the Sixth Amendment requires counsel to offer such advice. *See Chaidez*, 568 U.S. at 352-54. Under retroactivity principles, *Padilla*'s new rule applies prospectively to defendants whose convictions were not yet final at the time of *Padilla*, but not retrospectively to defendants (like Williams)

10

whose convictions were already final. *See Chaidez*, 568 U.S. at 347, 358; *see also Newman*, 805 F.3d at 1145.

Williams tries to reframe his argument as an objection to "counsel's failure to mitigate or otherwise account for the known immigration consequences of his plea" in negotiating the plea, during the plea hearing, and at the sentencing hearing (Br. 15-18). But this Court rejected that precise reframing in his codefendant's appeal:

> Newman first contends that his lawyer's performance was deficient because he failed to "negotiate an effective plea bargain" and to "mitigate harm under the plea agreement." Appellant's Br. 15. By this, he faults counsel for failing to research and consider potential immigration consequences when negotiating his plea deal. See id. at 18–20.
>
> This argument is foreclosed by *Padilla* and *Chaidez*. Simply put, it makes no sense to suggest that although defense attorneys had no duty to advise their clients about the immigration consequences of pleading guilty prior to *Padilla*, they nonetheless had a duty to research those consequences and take them into account when negotiating a plea deal. Accordingly, even under the more searching de novo standard, we conclude that the district court properly rejected Newman's first claim for ineffective assistance.

*Newman*, 805 F.3d at 1146-47.[1]

---

[1] Williams continues to cite *Glover v. United States*, 531 U.S. 198 (2001), for the proposition that counsel has a "duty to mitigate harm under the plea agreement" (Br. 20). As the district court explained, however,

(continued . . . )

In one paragraph, Williams suggests "more general" failings by counsel "not directly related to immigration" (Br. 18), because counsel sought to mitigate immigration consequences for Newman—"although he got the [immigration] law wrong," *Newman*, 805 F.3d at 1144—while making no such efforts on Williams's behalf. But that theory was not preserved below, having been referenced only in passing in the reply brief (see ECF 43 at 4) and never addressed by the district court. *See Twin Rivers Paper Co. LLC v. SEC*, 934 F.3d 607, 615 (D.C. Cir. 2019) ("arguments generally are forfeited if raised for the first time in reply").

In any event, the comparison to co-defendant Newman is simply another effort to bring in through the back door the duty rejected by *Chaidez* and *Newman*: a retroactively enforceable, pre-*Padilla* duty to advise about immigration consequences of a plea. The fact that an attorney *sometimes* considered immigration consequences in appropriate

"*Glover* focused solely on articulating the correct prejudice analysis for 'counsel's failure to object to an error of law affecting the calculation of a sentence,' and the decision explicitly stated that 'the question of deficient performance is not before [the Court]'" (JA87) (quoting *Glover*, 531 U.S. at 203-04). *Glover* accordingly does not stand for the proposition that a defendant who is precluded from raising a non-retroactive claim of attorney error may simply recharacterize it as a claim of counsel's failure to "mitigate" harm.

cases before *Padilla* does not mean his other clients may have their pre-*Padilla* convictions vacated in the absence of such consideration. Nor was there anything sinister in counsel asking for a shorter effective prison sentence for Williams, while requesting a longer effective prison sentence meant to minimize immigration consequences for Newman. *Compare* JA66 (Williams's sentence of 12 months and 1 day allowed him to earn good-time credits, making effective sentence a bit over 10 months), *with* JA80-81 (Newman's sentence of exactly 12 months did not allow good-time credits). Only Newman expressed concerns about "INS implications" on the record. *See Newman*, 805 F.3d at 1145 (noting that Newman expressed a "desire to avoid immigration consequences" at his sentencing hearing). And of course, because counsel misunderstood the immigration implications of Newman's conviction anyway, *see id.* at 1144-45, there would have been no immigration benefit for Williams if counsel had sought the Newman sentence for him. Williams just would have missed out on good-time credits and spent longer in jail. *Cf. United States v. Sayan*, 968 F.2d 55, 65 (D.C. Cir. 1992) ("a lawyer is not 'ineffective' when he fails to file a meritless motion").

Counsel was ineffective in *Newman* because he affirmatively misrepresented the immigration consequences of conviction, potentially inducing Newman to stick with a plea deal he otherwise would have withdrawn from. *See* 805 F.3d at 1147. Williams has never alleged a similar misrepresentation in his case—only a failure to advise (see JA85-86), which pre-*Padilla* law did not require and *Chaidez* does not permit to be applied retroactively.

## C. Williams Offers No Viable Claim of Prejudice or Explanation for His Delay.

Williams's coram nobis request fails for two other reasons.

*First*, Williams offers no colorable claim of prejudice. *Cf. Marshall*, 946 F.3d at 595 (when claim of ineffectiveness is first raised on direct appeal, this Court will not remand for hearing unless defendant alleges "colorable" claim). While he now insists that he would not have accepted his plea if he had understood that his conviction could make him deportable (Br. 23-24), he said in his plea colloquy that he "underst[ood]" that "this felony offense may have the consequences of deportation or exclusion from admission to the United States," but he "still want[ed] to plead guilty to this offense" (JA24).

14

The Supreme Court has counseled that courts should focus on that sort of "contemporaneous evidence to substantiate a defendant's expressed preferences," and not "upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Lee*, 137 S. Ct. at 1967. *Lee* presented "unusual circumstances" where the defendant offered "substantial and uncontroverted evidence" from his plea colloquy "that he would have rejected the plea had he known that it would lead to mandatory deportation." *Id.* at 1967, 1969. By contrast, the contemporaneous evidence from Williams is that understood the risk of deportation and chose to plead guilty anyway. His contrary *post hoc* claims now cannot overcome that contemporaneous record and establish prejudice. *See United States v. Knight*, 981 F.3d 1095, 1101 (D.C. Cir. 2020) ("A criminal defendant alleging ineffective assistance of counsel generally may not rely solely on post hoc testimony to show that he would have accepted the plea offer if he had been properly advised.").[2]

---

[2] We note that, despite Williams's dire warnings of the inevitability of deportation ("not if, but when he is placed into removal proceedings") (Br. 16), he continues to live in Maryland twenty years after his conviction (see JA73, JA75). Perhaps this is because he does not have a passport

(continued . . . )

*Second*, despite acknowledging that he must establish "'sound reasons for failing to seek relief earlier'" (Br. 13), Williams never explains why he waited so long in seeking coram nobis relief. *Cf.* ECF 43 at 2-3 (arguing in reply below that request for relief was not delayed too long, without explaining reason for delay). He filed for coram nobis relief in 2021—18 years after his conviction, 11 years after *Padilla*, 8 years after *Chaidez*, and 6 years after his co-defendant's *Newman* decision. Because no "sound reasons exist[ ] for failure to seek appropriate earlier relief," *Morgan*, 346 U.S. at 512, he offers no viable basis for coram nobis relief now. *See, e.g.*, *United States v. Delhorno*, 915 F.3d 449, 452 (7th Cir. 2019) (affirming summary denial of coram nobis petitions where defendant failed to offer any "sound reason" for a failure to seek earlier relief); *United States v. Sash*, 374 F. App'x 198, 199 (2d Cir. 2010) (same); *United States v. Bejacmar*, 217 F. App'x 919, 921 (11th Cir. 2007) (same).

---

(JA74), so he (unlike Newman) has not traveled abroad since his conviction. Whatever the reason, his decades of stability in Maryland indicate that the immigration consequences of his plea are less certain than he suggests.

16

## CONCLUSION

WHEREFORE, the government respectfully submits that the judgment of the District Court should be affirmed.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

CHRISELLEN R. KOLB
NICHOLAS P. COLEMAN
T. ANTHONY QUINN
Assistant United States Attorneys

_____/s/_____
ERIC HANSFORD
D.C. Bar #1017785
Assistant United States Attorney
601 D Street, NW, Room 6.232
Washington, D.C. 20530
Eric.Hansford@usdoj.gov
(202) 252-6829

17

# CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

I HEREBY CERTIFY pursuant to Fed. R. App. P. 32(g) that this brief contains 3,207 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and D.C. Circuit Rule 32(e)(1), and therefore complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B). This brief has been prepared in 14-point Century Schoolbook, a proportionally spaced typeface.

       /s/       
ERIC HANSFORD
Assistant United States Attorney

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have caused a copy of the foregoing brief for appellee to be served by electronic means, through the Court's CM/ECF system, upon counsel for appellant, Rion Latimore, Esq., on this 27th day of April, 2023.

       /s/       
ERIC HANSFORD
Assistant United States Attorney
